# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORIE HALFORD, | 1:10-cv-01214-AWI-BAM |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Lorie Halford ("Plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act, Title VI (the "Act"). Pending before the Court is Plaintiff's motion for summary judgment and the cross-motion for summary judgment of defendant Commissioner of Social Security ("Commissioner").  Plaintiff filed her complaint on July 3, 2010.  (Doc. 1.)  Plaintiff filed her summary judgment motion on February 19, 2011. ( Doc. 15.)   The Commissioner filed his summary judgment cross-motion and opposition on March 31, 2011.  (Doc. 16.)  Plaintiff filed her Reply Brief on April 5, 2011. (Doc. 17.)  This matter was reassigned to the undersigned judge on October 17, 2011 (Doc. 19.) The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to United States Magistrate Judge Barbara A. McAuliffe for findings and recommendations to Chief United States District Judge Anthony W. Ishi.

1

## II.   BACKGROUND

**A.   Overview of Administrative Proceedings**

On December 18, 2006, Plaintiff applied for disability insurance benefits under Title VI of the Social Security Act, alleging disability beginning June 1, 2004. (Administrative Record ("AR") at 79-82.) Plaintiff claims to suffer from thyroid cancer, poor vision, headaches, leg pain, back pain, obesity and various mental and social disorders. (AR at 33.)

Plaintiff's application was initially denied and denied again on reconsideration. (AR at 46, 50.) Plaintiff's application was subsequently denied by an Administrative Law Judge ("ALJ") in a decision issued on June 26, 2008. (AR at 16-26.) The Appeals Council denied review on April 28, 2010. (AR at 3-7.) Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

**B.   Plaintiff's Background and Work Experience**

Plaintiff was born on July 2, 1956. (AR at 32.) Plaintiff has a General Equivalency Diploma ("GED"), is literate and able to communicate in English. (AR at 32, 36.) Plaintiff has not worked since December 18, 2006. (AR at 33.) Prior to 2006, Plaintiff had worked intermittently assisting her mother as a floral designer, nurse's aid and hotel housekeeper, among other things, but did not hold down a steady job due to spousal abuse and homelessness. (AR at 88-89, 101, 123.)

**C.   Plaintiff's Testimony At the Administrative Hearing**

Plaintiff testified she currently lives with a roommate who pays the rent on the residence. (AR at 33.) For 30 years prior to her current living arrangements, Plaintiff lived with a physically abusive husband who prevented Plaintiff from leaving her home. (AR at 39, 88-89, 92-93, 156.) After Plaintiff left her ex-husband, but prior to her current living arrangements, she was homeless. (Pl.'s Op. Brief, 5.) (AR at 39, 88-89, 92-93, 156.)

Plaintiff wakes at approximately 7:00 a.m. each morning and generally is able to dress and bathe herself. (AR at 33-34.) Sometimes Plaintiff requires assistance tying her shoes or washing her feet due to her knee problems. (AR at 34.) Plaintiff does limited chores and

1 cooking around the house, however, Plaintiff's roommate is responsible for "most" of the
2 household chores.  (AR at 34-35.)

3      Plaintiff does not partake in any hobbies, watches approximately six hours of television a
4 day, and attempts limited exercise consisting of "walk[ing] to the bathroom and back, and
5 [moving her] legs up and down."  (AR at 35.)  Plaintiff does not participate in any activities
6 outside her home, nor does she have any friends or family.  (AR at 36.)   Plaintiff has problems
7 eating due to a "big lump in [her] throat . . . ." (AR at 36.)  Plaintiff additionally has problems
8 sleeping due to pain in her lower back, never sleeping more than two to three hours a night.  (Ar
9 at 36.)  Plaintiff testified to suffering from various mental health problems.  Specifically, Plaintiff
10 struggles with concentration, memory and general coping abilities.  (AR at 39.)  Plaintiff is
11 capable of reading the newspaper, limited by blurry vision.  (Ar at 32.)  Plaintiff is also capable
12 of simple adding and subtracting.  *Id.*

13      Plaintiff testified she suffers from pain all the time, and the pain gets worse as the day
14 goes on.  (AR at 39.)  On a scale of 1 to 10 with ten being the worse level of pain, Plaintiff
15 claims to suffer from an average number of eight, with medication.  (AR at 39.)  Plaintiff
16 testified to suffering from pain in her hips, lower back and knees.  (AR at 39.)  Plaintiff testified
17 she can only stand for about 10-15 minutes at a time.  (AR at 38.)  Plaintiff additionally testified
18 she can only sit for 10-15 minutes, and is required to continuously move around.  (AR at 38.)

19 **D.   Medical History**

20      Plaintiff claims she suffers from physical impairments of her knee and back resulting
21 from an injury sustained in the mid-1990's while lifting a heavy laundry basket.  (AR at 161.)
22 Plaintiff also claims various mental disorders resulting from an abusive relationship with her ex-
23 husband. (AR at 166-67, 170, 177.) Plaintiff described her ex-husband as a drug abuser and
24 spouse abuser who controlled Plaintiff with intimidation and physical abuse.  *Id.*   There are
25 several references and diagnosis in the medical records relating to Plaintiff's previous
26 experiences with spousal abuse.  (AR at 166-67, 170, 177.)

27      The ALJ admitted into evidence plaintiff's submitted medical records.  The pertinent
28 medical history is summarized as follows:

1          **1.      Examining Physician Dr. Miguel Hernandez**

2          On March 21, 2007, Plaintiff received a comprehensive internal medicine evaluation

3    from Dr. Miguel Hernandez.  (AR at 161-165.)  Dr. Hernandez diagnosed Plaintiff as suffering

4    from: right knee osteoarthritis; chronic low back pain; degenerative disk disease of the lumbar

5    spine; enlarged thyroid nodule; blurry vision; major depressions; post-traumatic stress disorder

6    and; morbid obesity. (AR at 164.)

7          Dr. Hernandez's functional assessment of Plaintiff included findings that: Plaintiff could

8    stand and walk in an eight-hour day for no more than six hours with 15-20 minute breaks every

9    two hours**;** Plaintiff could be expected to sit in an eight-hour day less than six hours; and Plaintiff

10   can lift and carry on an occasional and frequent basis10 pounds.  Dr. Hernandez also observed

11   Plaintiff to have the following postural limitations: bending, stooping and crouching in a

12   repetitive manner.  Lastly, Dr. Hernandez noted Plaintiff would have some environmental

13   limitations attributable to her deconditioned state and morbid obesity.

14         **2.      Examining Psychologist Dr. James Scaramozzino**

15         On March 25, 2007, Dr. James Scaramozzino performed a comprehensive psychiatric

16   evaluation of Plaintiff.  Dr. Scaramozzino, commenting on the results of Plaintiff's mental status

17   examination, stated that Plaintiff's behavior, mental activity, speech and thought content was

18   appropriate.  (AR at 168.)  Plaintiff's mood was depressed, and her sleeping habits were poor

19   which was influenced by her pain. Plaintiff appeared to respond to questions in an open and

20   honest manner. (AR at 170.)  There did not appear to be any evidence of Plaintiff exaggerating

21   symptoms, nor did there appear to be any inconsistencies throughout the evaluation.  (AR at

22   170.)

23         Dr. Scaramozzino's psychiatric diagnosis entailed the following findings: Plaintiff has a

24   depressive disorder, pain disorder associated with both psychological factors and a general

25   medical condition and an avoidant personality disorder.

26         Dr. Scaramozzino's functional assessment of Plaintiff entailed the following findings:

27   Plaintiffs ability to understand and remember very short and simple instructions is good;

28   Plaintiffs ability to understand and remember detailed instructions is good; Plaintiff's ability to

maintain concentration and attention is good to fair, influenced by her pain disorder; Plaintiffs ability to accept instructions from a supervisor and respond appropriately is good to fair, influenced by her pain disorder and depressive symptoms; Plaintiff's ability to sustain an ordinary routine without special supervision is good; Plaintiff's ability to complete a normal workday/workweek without interruptions at a constant pace is fair at this time, influence by her pain disorder and depressive symptoms; Plaintiff's ability to interact with coworkers is good to fair;  Plaintiffs concentration ability and abstract thinking, judgment and insight was within normal limits; and Plaintiff's ability to deal with various changes in the work setting is minimal to fair, influenced by her avoidant personality disorder characteristics, pain disorder and depressive symptoms.  (AR 170-171.)

### 3.     Medical Consultant I. Ocrant, M.D.

On May 1, 2007, Medical Consultant I. Ocrant M.D. performed a physical residual functional capacity assessment of Plaintiff's physical limitation claims.  Dr. Ocrant observed the following: (1) Plaintiff can lift 50 pounds occasionally; (2) Plaintiff can list 25 pounds frequently; (3) Plaintiff can stand and walk (with normal breaks) for a total of six hours in an eight hour work day; (4) Plaintiff can sit (with normal breaks) for a total of six hours in an eight hour workday; (5) Plaintiff had frequent to occasional postural limitations; (6) Plaintiff did not have any manipulative limitations; (7) Plaintiff did not have any visual limitations; (8) Plaintiff did not have any visual limitations; and (9) Plaintiff did not have any environmental limitations (AR at 189-193.)

As reflected in the ALJ's order, Dr. Ocrant also noted that: Plaintiff takes no pain medication, there was no evidence of thyroid cancer or prescriptions for thyroid treatment, no evidence to support claims of dizziness, headaches or fatigue, and that Plaintiff's need for the cane is not medically documented. (AR at 187.)

### 4.     State Agency Physician A.H. Middleton, M.D.

On April 11, 2007, state agency physician A.H. Middleton, M.D. performed a mental residual functional capacity assessment.  (AR at 172-187.)  Dr. Middleton's assessment was as follows: Plaintiff suffered from mild depression, had no cognitive impairment, Plaintiff's vision

limitations were non-severe, and Plaintiff suffered from mild degeneration in her lower spine and right knee.  Dr. Middleton also noted that there were possible psychological factors in Plaintiff's pain.  Dr. Middleton determined that Plaintiff had mild restrictions of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  *Id.*

Dr. Middleton determined that Plaintiff has an affective disorder and a somatoform disorder that are severe and would cause moderate difficulties maintaining social functioning and maintaining concentration, persistence or pace. (AR at 172, 177.)  Plaintiff would have moderate problems interacting appropriately with the general public, and with getting along with co-workers or others without distracting them or exhibiting behavioral extremes.  (AR at 184.)  Dr. Middleton also expressed a concern over Plaintiff's ability to adapt to change.  (AR at 186.)  Dr. Middleton determined that Plaintiff should have limited contact with public and co-workers. (AR at 187.)  Dr. Middleton also opined that Plaintiff's  obesity and degeneration combined restrict Plaintiff to no more than three-four hours standing a day, however, allowed for unlimited sitting. *Id.*

### 5.    Medical Consultant Dr. Stephen D. Bailey

The ALJ considered the opinions of State Agency psychological consultant Stephen D. Bailey.  Dr. Bailey determined Plaintiff's mental impairments to be non-severe.  (AR at 216.) Specifically, Dr. Bailey found Plaintiff: Did not have any restriction of activities of daily living; had mild difficulties in maintaining social functioning and had no difficulties in maintaining concentration, persistence or pace.  (AR at 226.)  Dr. Bailey stated that Plaintiff's claims were "somatic" in nature.  (AR at 227.)  Specifically, Dr. Bailey stated that:

> *He* does make some allegations of not completing tasks due to *his* mind wandering, and forgetting things.  *He* does not report having to cease any activities due to these allegations.

> There has been no diagnosis of depression.  Indeed, the only mention is with somatic CE doc who notes that 20 pound weight loss may be due to depression after somatic surgery for alleged nerve damage.

> This individual is also approx *300 pounds,* so weight loss of 20 pounds after a major surgery, would mean less than a 10% weight loss (6%).  The claimant does not himself, allege depression, but rather, difficulties described above.

6

1   (Emphasis added.) (AR at 227.)

2   **E.     Vocational Expert's Testimony At the Administrative Hearing**

3          During the administrative hearing, a vocational expert, Stephen Schmidt (the "VR")

4   provided testimony regarding available jobs in the national economy for individuals with physical

5   limitations similar to Plaintiff's.  The ALJ presented two hypothetical scenarios to the VR.  In the

6   first hypothetical, the VR was asked about the availability of jobs in the national economy for a

7   person who (1) could sit six hours out of an eight-hour day, (2) could stand six hours out of an

8   eight-hour day, (3) could walk six hours out of an eight-hour day, (4) could occasionally and/or

9   frequently lift and carry ten pounds, (5) requires a cane for ambulation, (6) could stoop, bend,

10  crouch, kneel, crawl and climb stairs on an occasional basis only, (7) had a fair ability to maintain

11  attention, concentration and interact with supervisors, coworkers and deal with the public.  (AR

12  41-43.)  The VR testified that an individual with such a medical and vocational background could

13  perform work existing in significant numbers in the economy such as a cashier (90,000 jobs), an

14  information clerk (10,000 jobs), and a garage attendant (9,000 jobs). (AR at 43.)

15          In the second hypothetical, the ALJ described the same individual as in the first

16  hypothetical, however, the second hypothetical person could only walk, stand and sit for 15

17  minutes out of an eight-hour day.[1]  The VR responded that there would not be any jobs in the state

18  or national economy for the second hypothetical individual. (AR at 43.)

19  **F.     ALJ Findings**

20          The ALJ found Plaintiff's testimony at the administrative hearing consistent with her

21  previous statements to the administration and examining physicians, as were Plaintiff's

22  roommate's statements to the administration. (AR at 19-26.)  In her June 26, 2008 decision,

23  however, the ALJ determined that Plaintiff was not disabled and not eligible for disability

24  benefits.  The ALJ made the following findings:

25  _____

26          [1] Plaintiff argues this hypothetical misstates Plaintiff's testimony.  Specifically, Plaintiff testified that she
    could only walk, sit or stand for 15 minutes at a time, whereas the ALJ posed a hypothetical question to the VR
27  which entailed an individual who could only sit, stand or walk for 15 minutes out of an eight hour day, total.
    However, because the ALJ determined that Plaintiff fit the medical and vocational background described in the first
28  hypothetical, rather than the second, Plaintiff's improper hypothetical argument has no bearing on this appeal.

7

1.     Plaintiff has not engaged in substantial gainful activity since December 18, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*);

2.     Plaintiff has the following severe impairments: degenerative disc disease, right knee osteoarthritis, a thyroid condition, obesity, depression and a pain disorder (20 CFR 416.920©);

3.     Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4.     Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that Plaintiff can sit for six hours, stand for six hours, and walk for six hours in an eight-hour workday with normal breaks.  Plaintiff can lift ten pounds occasionally or frequently.  Plaintiff requires a cane for ambulation. Plaintiff can only occasionally stoop, bend and crouch. Plaintiff can only occasionally kneel or crawl, and can occasionally climb stairs, but she cannot climb ladders.  Plaintiff has a fair ability to maintain attention and concentration and a fair ability to interact with supervisors, relate to coworkers, and deal with the public. Plaintiff has a fair ability to adapt to changes in the work setting, with fair meaning a limited but satisfactory ability;

5.     Considering Plaintiff's age, education , work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy.

6.     Plaintiff does not have a disability within the meaning of the Social Security Act.

(AR at 22.)

## III.   DISCUSSION

**A.   Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  Substantial evidence is "more than a

mere scintilla," *see Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. If the evidence could reasonably support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since December 18, 2006; (2) has an impairment that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920©); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b); and (5) could perform jobs that exist in significant numbers in the national economy. (AR at 22.)

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

1   **B.      The ALJ's Residual Functional Capacity Finding**

2           The ALJ determined that Plaintiff's medically determinable impairments could reasonably

3   be expected to produce her alleged pain symptoms, however, rejected Plaintiff's statements

4   concerning the intensity, persistence and limiting effects of those symptoms.  (AR at 23.)  Plaintiff

5   argues the Commissioner's residual functional capacity finding was in error because the ALJ: (1)

6   improperly evaluated the credibility of Plaintiff's testimony; (2) improperly evaluated the

7   credibility of Plaintiff's roommate's testimony; (3) improperly rejected medical opinion evidence;

8   and (4) erroneously concluded Plaintiff could perform various jobs in the national workforce.  The

9   Court addresses each argument in turn.

10          **1.      Plaintiff's Testimony and Credibility finding**

11                  **i.      Legal Standard**

12          A two step analysis applies at the administrative level when considering a claimant's

13  subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

14  claimant must produce objective medical evidence of an impairment that could reasonably be

15  expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the

16  claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

17  claimant's testimony regarding the severity of her symptoms only if he makes specific findings

18  that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which

19  testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

20  *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and

21  convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court

22  to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p

23  (ALJ's decision "must be sufficiently specific to make clear to the individual and to any

24  subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons

25  for that weight").

26          An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

27  *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

28  reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

1  testimony by the claimant that appears less than candid, unexplained or inadequately explained

2  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

3  activities, claimant's work record, or the observations of treating and examining physicians.

4  *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

5              **ii.    The ALJ's Credibility Analysis Is Legally Insufficient**

6          The ALJ found Plaintiff's pain testimony to lack credibility because: (1) Plaintiff sought

7  minimal medical treatment; (2) X-rays revealed only mild changes of her lumbar spine and early

8  degenerative changes of her right knee; and (3) Plaintiff may be motivated by secondary gain.

9  (AR at 23.)  The ALJ, however, did not provide specific reasons why this evidence undermined

10 certain aspects of Plaintiff's subjective pain testimony.  *See Lester v. Chater,* 81 F.3d 821, 834 (9th

11 Cir. 1995) (to reject claimant's subjective complaints, the ALJ must provide specific, cogent

12 reasons);  *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (the ALJ must specify what

13 testimony is not credible and what evidence undermines it).

14         Moreover, the ALJ's credibility determination is ambiguous in that it is conflated with the

15 ALJ's discussion of weight given to the opinions of various examining and consulting physicians.

16 As a result, it is difficult to divine all the reasons the ALJ considered in making her credibility

17 finding.  Regardless, to the extent the ALJ determined Plaintiff was not credible based on the

18 rejection of physician and psychologist opinions that supported Plaintiff's testimony, that aspect

19 of the credibility determination was in error.  *See Gundy v. Astrue,* 433 Fed. Appx. 595, 597 (9th

20 Cir. 2011).

21         Even if the ALJ's stated reasons for rejecting Plaintiff's pain testimony were properly

22 specified, these reasons are not clear and convincing.

23         **iii.    The ALJ's Assertion that Plaintiff May Be Motivated By Secondary**

24                  **Gain**

25         The ALJ rejected Plaintiff's pain testimony, in part, because the ALJ believed Plaintiff

26 "may be motivated by secondary gain."  (AR at 23.)  The ALJ, however, did not provide a single

27 reason to support this concern, nor can the Court ascertain any such reason from the record.  As

28 there is no evidence to support the ALJ's conclusion that Plaintiff may be motivated by secondary

gain, this reason does not provide clear and convincing evidence for rejecting Plaintiff's pain

testimony. *See Regennitter v. Commissoner of Social Sec. Admin.* 166 F.3d 1294, 1298 (9th Cir.

1999) ("the ALJ speculated that Regennitter had chosen a sedentary lifestyle . . . but the ALJ did

not point to any evidence in the record to support this speculation.")

### iv.    Plaintiff's Failure to Seek Medical Treatment

A claimant's failure to seek medical treatment can be a relevant factor in evaluating the

credibility of the claimant's subjective pain symptoms.  SSR 96-7p, *available at* 1996 WL 374186

(an "individual's statements may be less credible if the level or frequency of treatment is

inconsistent with the level of complaints . . . ."); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th

Cir. 1989) (An "unexplained, or inadequately explained, failure to seek treatment ... can cast

doubt on the sincerity of [a] claimant's pain testimony,"); *Johnson v. Shalala*, 60 F.3d 1428, 1434

(9th Cir. 1995) (no medical treatment or a conservative level of medical treatment has been found

to suggest a lower level of pain and functional limitations).

However, "the adjudicator must not draw any inferences about an individual's symptoms

and their functional effects from a failure to seek or pursue regular medical treatment without first

considering any explanations that the individual may provide, or other information in the case

record, that may explain infrequent or irregular medical visits or failure to seek medical

treatment."  SSR 96-7p, *available at* 1996 WL 374186; *see also Gamble v. Chater,* 68 F.3d 319,

322 (9th Cir.1995) ("It flies in the face of the patent purposes of the Social Security Act to deny

benefits to someone because he is too poor to obtain medical treatment that may help him.");

*Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996) (Because claimant could not maintain a job,

she had no insurance and could not afford treatment. "Thus, the fact that [claimant] was not taking

medication is not a clear and convincing reason for discrediting her symptom testimony."); *Orn v.

Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) (Where a claimant failed to seek treatment because she

lacked medical insurance, that would not support an adverse credibility determination); *Carmickle

v. Commissioner, Social Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir.2008) (improper to discount

claimant's credibility on basis of failure to pursue treatment when there is good reason for not

doing so, such as lack of insurance).  This is particularly true with respect to claims of mental

1 impairments, as "it is a questionable practice to chastise one with a mental impairment for the
2 exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater,* 100 F.3d 1462, 1467-68
3 (9th Cir, 1996).

4        The record contains numerous references to the fact that Plaintiff did not have access to
5 medical care for many years resulting from a lack of employment, income, insurance and spousal
6 abuse.  (AR at 39, 88, 89, 91-93,156, 160-162, 164.)  Indeed, the ALJ noted Plaintiff's financial
7 circumstances and history of spousal abuse. (AR at 23.)  Moreover, the ALJ acknowledged that
8 prior to the administrative hearing, Plaintiff had  been seeing a treating physician at a free clinic
9 once a month, and received medications.  (AR at 23.)

10       The Commissioner argues that "[t]he ALJ clearly did not believe [Plaintiff's] allegations
11 that abuse by her former husband and lack of insurance could account for her ongoing failure to
12 seeking [sic] treatment including a complete failure to seek mental treatment." (Commissioner's
13 Brief, 5: 17-20.)  Nothing in the record, however, indicates that the ALJ disbelieved Plaintiff's
14 claims of spousal abuse and lack of insurance.  On the contrary, the ALJ appears to accept
15 Plaintiff's contentions in this regard.  (AR at 23-24.)  Regardless, even if the ALJ intended to
16 reject Plaintiff's claims of spousal abuse and lack of insurance accounting for Plaintiff's lack of
17 medical treatment, the ALJ is required to provide clear and convincing reasons for rejecting this
18 testimony.  *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).   Neither an explicit rejection
19 of this testimony, nor any reasons for rejecting this testimony were provided in the ALJ's opinion.
20 Accordingly,  Plaintiff's failure to seek medical treatment is not a clear and convincing reason for
21 rejecting her testimony.

22              **v.       Testimony of Plaintiff's Roommate**

23        Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take
24 into account, unless he or she expressly determines to disregard such testimony and gives reasons
25 germane to each witness for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)
26 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.1993)); *Regennitter v. Commissoner of*
27 *Social Sec. Admin.* 166 F.3d 1294, 1298 (9th Cir. 1999) (In rejecting the ALJ's decision to
28 discredit a lay witness testimony on the grounds of bias, the Ninth Circuit reiterated that "[t]he

13

1     fact that a law witness is a family member cannot be a ground for rejecting his or her testimony.

2     To the contrary, testimony from law witnesses who see the claimant every day is of particular

3     value.")  *See also* SSR 96-7p, *available at* 1996 WL 374186**;** 20 C.F.R. § 416.913(d)(4).

4         The ALJ rejected the testimony of Plaintiff's roommate, Elliott Hood, noting that he may

5     be motivated by secondary gain.  However, the ALJ provides no explanation for why she believed

6     Mr. Hood may be motivated by secondary gain, nor can the Court identify any such evidence from

7     the record.  On the contrary, the ALJ's only other reference to Mr. Hood noted that Mr. Hood's

8     statements to the administration were consistent with Plaintiff's. (AR at 23.)  Accordingly, the

9     ALJ erred in evaluating the lay witness testimony of Mr. Hood.

10          **vi.**    **The ALJ's Finding that X-Rays Did Not Support Plaintiff's Pain**

11            **Claims**

12         Whether objective medical evidence supports a claimant's subjective pain assertions is a

13     proper consideration in the residual functional capacity analysis.  *See* SSR 96-8p, *available at*

14     1996 WL 374184 ("the RFC assessment must be based on *all* of the relevant evidence in the case

15     record, such as . . . "[m]edical signs and laboratory findings."); SSR 96-7p (objective medical

16     evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the

17     ability to function); 20 C.F.R. § 416.929 (objective medical evidence can be used in determining

18     credibility; inconsistencies in evidence will support a rejection of credibility); *Tidwell v. Apfel*,

19     161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other

20     tests reporting normal provides a basis for rejecting claimant's testimony of severity of

21     symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the

22     record and medical evidence supports a rejection of a claimant's credibility).

23         Nonetheless, "an adjudicator may not discredit a claimant's testimony of pain and deny

24     disability benefits solely because the degree of pain alleged by the claimant is not supported by

25     objective medical evidence." *Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir. 1991); *see also* SSR

26     96-7p,  *available at* 1996 WL 374184 ("the absence of objective medical evidence supporting an

27     individual's statements about the intensity and persistence of pain or other symptoms is only one

28

factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence").

Indeed, "[d]espite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601.  It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings.  *Id*.  "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755).  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id*. at 602.

SSR 96-8p further instructs administrators that

> "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim.")

SSR 96-8p, *available at* 1996 WL 374184; *see also* SSR 88-13 ("When medical signs and laboratory findings do not substantiate any physical impairment capable of producing the alleged pain ..., the possibility of a mental impairment as the basis for the pain should be investigated."); *Lester v. Chater,* 81 F.3d 821, 829-30 (9th Cir. 1995) ("Pain merges into and becomes a part of the mental and psychological responses that produce the functional impairments.  The components are not neatly separable . . . . The Commissioner must consider whether these impairments *taken together* result in limitations [resulting in disability].) (Emphasis in original).

The ALJ's use of these x-rays to undermine Plaintiff's credibility does not provide a clear and convincing reason for rejecting Plaintiff's pain testimony.  First, despite these x-rays, the ALJ determined that Plaintiff has the following "severe" impairments: degenerative disc disease and right knee osteoarthritis.  (AR at 21.)  Additionally, the ALJ determined that these severe conditions could reasonably be expected to produce the alleged symptoms.  (AR at 23.)  As a practical matter, the ALJ's attempt to discredit Plaintiff's pain testimony contradicts her findings.

1   The legal error in the ALJ's analysis, however, lies in her failure to evaluate Plaintiff's

2  knee and back conditions in conjunction with Plaintiff's uncontroverted psychological pain

3  disorder and morbid obesity.  The undisputed evidence shows Plaintiff does in fact suffer from

4  psychological pain disorder. (AR at 161-165, 170, 172.)  Plaintiff further suffers from obesity.  *Id.*

5  These factors, analyzed in conjunction with Plaintiff's  right knee osteoarthritis and degenerative

6  disc disease of the lumbar spine are "critical" to the ALJ's credibility finding. SSR 96-8p,

7  *available at* 1996 WL 374184; *see also* SSR 88-13 ("When medical signs and laboratory findings

8  do not substantiate any physical impairment capable of producing the alleged pain ..., the

9  possibility of a mental impairment as the basis for the pain should be investigated."); 20 C.F.R. §

10  422.406(b)(1) (providing that Social Security Rulings are binding on all components of the Social

11  Security Administration); *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984) (same).

12   The ALJ referred to an x-ray showing Plaintiff's objective medical condition appeared to

13  be mild. The ALJ, however, did not evaluate such medical conditions in conjunction with

14  Plaintiff's uncontroverted somatoform pain disorder or Plaintiff's obesity. Thus, the ALJ failed to

15  state constitute clear and convincing reasons for rejecting Plaintiff's pain testimony.

16   **2.**  **The ALJ's Partial Rejection of the Medical Opinion Evidence of Dr.**

17      **Miguel Hernandez**

18   In the hierarchy of physician opinions considered in assessing a social security claim,

19  "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and

20  an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.*

21  *Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 404.1527(d)(1)-(2). The opinion of

22  an examining physician is entitled to greater weight than the opinion of a nonexamining

23  physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450

24  (9th Cir.1984).  The Commissioner must provide "clear and convincing" reasons for rejecting the

25  uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506.  If contradicted by

26  another doctor, the opinion of an examining doctor can only be rejected for specific and legitimate

27

28

16

1  reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d

2  1035, 1043 (9th Cir. 1995).

3     Here, because Dr. Hernandez was the primary examining physician, his opinion is entitled

4  to the most weight. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753

5  F.2d 1450 (9th Cir.1984).  However, Dr. Hernandez's opinion was contradicted by at least one

6  consulting physician, *i.e.,* Dr. Ocrant.  Thus, to reject some of Dr. Hernandez's findings, the ALJ

7  needed to offer specific and legitimate reasons that are supported by substantial evidence in the

8  record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

9     The ALJ claimed to accord "great weight" to the opinions of examining physician Dr.

10 Miguel Hernandez, who opined, *inter alia,* that Plaintiff could not sit for six hours, and that

11 Plaintiff could stand and walk for six hours if given fifteen to twenty minute breaks every two

12 hours.[2]  (AR at 24.) The ALJ rejected Dr. Hernandez's opinion that Plaintiff could not sit for six

13 hours in an eight hour day, citing Plaintiff's activities of daily living and Plaintiff's failure to seek

14 medical treatment.[2]  (AR at 24.)  The ALJ also referenced Dr. Ocrant's report which stated

15 Plaintiff's need for her cane was not medically documented.  *Id.*

16    In further support of the ALJ's rejection of Dr. Hernandez's opinion, the ALJ referenced

17 what appeared to be the opinions of three separate medical consultants: Dr. Ocrant (whose

18 opinion tended to contradict the findings of Dr. Hernandez); Dr. Rosa (whose opinion tended to

19 support that of Dr. Hernandez); and Dr. Middleton (whose opinion was presented as contradicting

20 the findings of Dr. Hernandez).  The ALJ claimed to give "significant weight to these opinions on

21 the whole." (AR at 24.)  Notably, however, the opinions attributed to Dr. Middleton are the

---

24    [2] As noted by Plaintiff, the ALJ did not expressly accept or reject Dr. Hernandez's opinion that Plaintiff
   could only stand and walk for six hours in an eight hour day if given fifteen to twenty breaks every two hours.
25 However, because the ALJ did not qualify her standing/walking findings by imposing the recommended breaks every
   two hours, the ALJ implicitly rejected this aspect of Dr. Hernandez's opinion. Nonetheless, the ALJ did not address
26 or otherwise provide reasons for rejecting this aspect of Dr. Hernandez's opinion.

27    [2] For the same reasons discussed in the Court's review of Plaintiff's credibility determination, *see supra*
   Section III.B.1.iv., the Court finds Plaintiff's failure to seek medical treatment does not amount to a specific and
28 legitimate reason based on substantial evidence required to reject Dr. Hernandez's medical opinions.

medical consultant comments of Dr. Ocrant.[3]   The opinions offered by Dr. Middleton, in fact,
tended to support Dr. Hernandez's findings.  (AR at 172-187.)  Thus, while the ALJ presented the
medical consultant opinions as tending to contradict those of Dr. Hernandez, two of the discussed
consultant opinions supported Dr. Hernandez's opinion, while only one tended to contradict it.
(AR at 24, 187.)

### i.    Plaintiff's Activities of Daily Living

A claimant's daily activities which contradict an examining physician's medical opinion
constitutes a specific and legitimate reason for rejecting that physician's opinion.  *See Morgan v.
Commissioner,* 169 F.3d 595, 602-03 (9th Cir. 1999); *Aarestad v. Comm'r Soc. Sec. Admin.,* 2011
WL 4342651 at *1 (9th Cir. Sept. 16, 2011) .

However, the Ninth Circuit has consistently held that a claimant does "not need to be
utterly incapacitated in order to be disabled." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.
2011); *see also Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability
claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).  "[T]he
mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a
car, or limited walking for exercise, does not in any way detract from her credibility as to her
overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2011); *seel also Reddick v.
Chater,* 157 F.3d 715, 722 (9th Cir. 1988) ("disability claimants should not be penalized for
attempting to lead normal lives in the face of their limitations."  Indeed, "many home activities are
not easily transferable to . . . the more grueling environment of the workplace, where it might be

---

[3] The ALJ does not mention any of these three physicians by name.  Rather, the ALJ begins by referring to
"[o]ne" physician's opinion and cites to Exhibit 8F, which is Dr. Ocrant's findings. (AR at 24, 189-193.)  Next, the
ALJ cites to "[a]nother DDS physician['s]" opinion and cites to Exhibit 13F, which is Dr. Rosa's findings. (AR at
24, 209-213.)   The ALJ then cites to "[o]ne analyst," citing Exhibit 6F, which is Dr. Middleton's findings.  (AR at
24, 186-7.)  However, the findings attributed to Dr. Middleton, *i.e.,* that Plaintiff takes no pain mediation, there is no
evidence of thyroid cancer, no evidence to support Plaintiff's allegations of dizziness, headaches or fatigue, and that
Plaintiff's reported need for her cane is not medically documented, are the medical consultant comments of Dr.
Ocrant, which appear at the bottom of Dr. Middleton's medical report. (AR at 24, 187.)  Accordingly, the ALJ
appeared to have misinterpreted Dr. Middleton's findings regarding Plaintiff's physical limitations in the ALJ's
residual functional capacity analysis.

1  impossible to periodically rest or take medication."  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.

2  1989).

3         The ALJ failed to specify which of Plaintiff's daily activities contradicted Dr. Hernandez's

4  findings.  Additionally, the ALJ failed to expressly reject Dr. Hernandez's opinion that Plaintiff

5  could only stand or walk for six hours out of an eight hour day if given fifteen to twenty minute

6  breaks every two hours.  The ALJ implicitly rejected this opinion by ultimately finding otherwise,

7  however, by not addressing Dr. Hernandez's opinion in this regard, the ALJ failed to provide any

8  reasons for rejecting this opinion.  These failures, standing alone, prevent a finding of specific and

9  legitimate reasons for rejecting Dr. Hernandez's opinions.  *See Magallanes v. Bowen,* 881 F.2d

10  747, 750 (9th Cir. 1989) (holding that the ALJ's burden in rejecting a physician's opinion is

11  satisfied "by setting out a detailed and thorough summary of the facts and conflicting clinical

12  evidence, stating his interpretation thereof, and making findings.")

13         Moreover, the record demonstrates that Plaintiff's daily activities do not undermine Dr.

14  Hernandez's findings that Plaintiff could not sit for six hours out of an eight hour day, or that

15  Plaintiff could only walk or stand for six hours out of an eight hour day if given fifteen to twenty

16  minute breaks every two hours.  While Plaintiff is generally able to dress and bathe herself,

17  Plaintiff sometimes requires assistance tying her shoes or washing her feet due to her knee

18  problems.  (AR at 34.)  Plaintiff does limited chores and cooking around the house, however,

19  Plaintiff's roommate is responsible for "most" of the household chores.  (AR at 34-35.)  Plaintiff

20  does not partake in any hobbies, watches approximately six hours of television a day, and attempts

21  limited exercise consisting of "walk[ing] to the bathroom and back, and [moving her] legs up and

22  down."  (AR at 35.)  Plaintiff does not participate in any activities outside her home  (AR at 36.)

23  There are no other references to Plaintiff's daily activities which appear in the record.  The daily

24  activities described herein do not undermine Dr. Hernandez's findings.

25         **ii.     Plaintiff's Need for Her Cane Is Not Medically Documented**

26         Whether the need to use a cane is medically documented is a legitimate consideration for

27  the ALJ.  *See Verduzco v. Apfel,* 188 F.3d 1087 (9th Cir. 1999); *Castaneda v. Astrue,* 344 Fed.

28

Appx. 396 (9th Cir. 2009).  An actual prescription for the use of a cane is not required so long as there is evidence that a treating or examining physician reports the use of a cane is necessary.  *See, Dobson v. Astrue,* 267 Fed. Appx. 610, 611-12 (9th Cir. 2008); *Robinson v. Soc. Sec. Admin.,* 12 Fed. Appx. 451 (9th Cir. 2001); *Verduzco v. Apfel,* 188 F.3d 1087 (9th Cir. 1999) ("[N]one of [claimant's] doctors had ever indicated that he used or needed to use an assistive device in order to walk.  In fact, two doctors had specifically noted that Appellant did not need such a device.");

The ALJ rejected Dr. Hernandez's opinion, in part, because Dr. Ocrant noted that Plaintiff's need for her cane is not medically documented.[4]  (AR at 24.)  On the contrary, Plaintiff's need to use a cane is medically documented.  Dr. Hernandez's functional assessment of Plaintiff states as follows: "Assistive devices: A cane is used for stability and support of the right knee[,] especially on ling [sic] distances and uneven terrain.  This is due to osteoarthritis of the right knee."  (AR at 164.)   Dr. Hernandez's functional assessment that Plaintiff requires use of the case due to osteoarthritis of the right knee sufficiently constitutes medical documentation.

### iii.      Competing Medical Consultant Opinions

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports

---

[4] Notably, the ALJ determined that "[Plaintiff] requires a cane for ambulation."  (AR at 22.)

1   from examining physicians, and on testimony from the claimant that conflicted with her treating

2   physician's opinion.  *Id*. at 751-52.

3         Here, the ALJ relied heavily on the opinions of medical consultant I. Ocrant in rejecting

4   Dr. Hernandez's opinions regarding Plaintiff's standing and sitting limitations.  The ALJ,

5   however, failed to provide any specific or legitimate reasons for accepting Dr. Ocrant's opinions

6   to the exclusion of the examining physician, Dr. Hernandez.  *See Regennitter v. Comm'r of Social*

7   *Sec. Admin.*, 166 F.3d 1294, 1298–99 (9th Cir.1999).  Indeed, the other reviewing physician's

8   findings tended to support the opinions of Dr. Hernandez, not Dr. Ocrant.  For example, Dr.

9   Middleton opined that Plaintiff's obesity and degeneration combined restrict Plaintiff to no more

10  than three-four hours standing a day.  (AR at 187.)

11        The ALJ's opinion does not provide substantial evidence to reject Dr. Hernandez's

12  standing, walking and sitting limitations.  The ALJ gave primacy to the opinion of a non-treating,

13  non-examining medical consultants.  Additionally, the ALJ appears to have only given significant

14  weight to Dr. Hernandez's opinion to the extent it was consistent with that of Dr. Ocrant.  Such

15  analysis is reversible error.  *See Taylor v. Comm. of Soc. Sec. Admin.,* 659 F.3d 1228 (9th Cir.

16  2011).

17      **3.**    **The ALJ's Partial Rejection of the Medical Opinion Evidence of Dr.**

18            **Scaramozzino**

19        As the primary examining psychologist, Dr. Scaramozzino's opinions are entitled to the

20  most weight.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d

21  1450 (9th Cir.1984).  The ALJ claimed to accord "great weight" to the opinions of examining

22  psychologist Dr. James Scaramozzino.  (AR at 24.)  Dr. James Scaramozzino opined, *inter alia,*

23  that Plaintiff's ability to deal with change was minimal to fair, influenced by her avoidant

24  personality disorder characteristics, pain disorder and depressive symptoms.  (AR at 171.)  The

25

26

27

28

1   ALJ rejected this opinion, citing Plaintiff's ability to travel independently to her doctor's

2   appointment by bus and Plaintiff's failure to seek mental health treatment.[5]

3          In further support of the ALJ's rejection of Dr. Scaramozzino's opinion, the ALJ

4   referenced the opinion of consulting physician Dr. Bailey, who opined that Plaintiff had no severe

5   mental impairments.  (AR at 25.)  The ALJ, however, contrasted Dr. Bailey's opinion with that of

6   Dr. Middleton, who opined that Plaintiff had an affective disorder and a somatoform disorder that

7   are "severe" and would cause moderate difficulties interacting appropriately with the general

8   public, getting along with co workers without exhibiting behavioral extremes, maintaining social

9   functioning,  maintaining concentration, persistence and pace .  (AR at 25.)  Ultimately, the ALJ

10  accorded "less weight to [these] opinions because these doctors did not personally examine the

11  claimant."  (AR at 25.)

12                   **i.        To the Extent the ALJ Relied on the Opinions of Dr. Bailey, Such**

13                            **Reliance Was In Error.**

14          Plaintiff argues that Dr. Bailey's report describes an individual other than Plaintiff.  The

15  Court agrees.  Dr. Bailey's consistent reference to Plaintiff as a "he" is the Court's first indication

16  that this opinion relates to a different claimant.  Dr. Bailey further states Plaintiff does not claim

17  her inability to concentrate or remember things has caused her to cease any activities, but this is

18  contrary to the statements Plaintiff made at the administrative hearing as well as to every other

19  examining doctor.  Dr. Bailey states Plaintiff is approximately 300 pounds, however, Plaintiff is

20  5'2" tall, and every other reference to Plaintiff's weight in the record states Plaintiff is

21  approximately 200 pounds.  Dr. Bailey references, in multiple instances, Plaintiff's weight loss

22  equaling 20 pounds following somatic surgery for alleged nerve damage, however, there is

23  nothing in the record indicating Plaintiff had undergone such a surgery or lost any weight as a

24  result thereof.  Lastly, Dr. Bailey's finding that Plaintiff does "not have any restriction of activities

25

26          [5]  For the same reasons discussed in the Court's review of Plaintiff's credibility determination, *see supra*
27  Section III.B.1.iv., the Court finds Plaintiff's failure to seek medical treatment does not amount to a specific and
    legitimate reason based on substantial evidence required to reject Dr. Hernandez's medical opinions.

28

1  of daily living" is contrary the record as a whole.  Accordingly, the Court finds Dr. Bailey's

2  opinions with respect to Plaintiff's disability status do not merit any weight or consideration.  To

3  the extent the ALJ relied on Dr. Bailey's opinions, it was in error.

4       ii.       **Plaintiff's Ability To Travel By Herself On The Bus to the Medical**

5                 **Examiner's Appointment**

6           The fact that Plaintiff independently traveled to her doctor's appointment by bus is not

7  clear and convincing reason for rejecting Dr. Scaramozzino's medical opinions. *See Bourgeois v.*

8  *Astrue,* 2011 WL 834165 *2 (W.D. Wash., Feb. 10, 2011) ("As to [claimant's] ability to ride the

9  bus, that may show she can be around others.  However, it does not show she can work with

10 others or handle the stress of a workplace."); *see also Cooper v. Bowen,* 815 F.2d 557, 561 (9th

11 Cir. 1987) (The ALJ may not penalize a claimant for attempting to live a normal life in the face of

12 her limitations).  Hence, Plaintiff's attendance at doctors appointments or taking the bus are not

13 grounds to reject Dr. Scaramozzino's medical opinions. *Bourgeois v. Astrue,* 2011 WL 834165

14 *2 (W.D. Wash., Feb. 10, 2011) **.**

15      iii.      **The ALJ's Rejection of Dr. Scaramozzino's Medical Opinions Is**

16                **Contrary To All Medical Evidence**

17          The only medical opinion which tended to contradict those offered by Dr. Scaramozzino

18 was that of Dr. Bailey.  Dr. Bailey's opinions, however, do not warrant any weight or

19 consideration.  *See supra,* Section III.B.3.i.  Moreover, State Agency Physician A.H. Middleton

20 shared Dr. Scaramozzino's same concerns regarding Plaintiff's ability to adapt to change in the

21 workplace. (AR at 186.)  Furthermore,  Dr. Middleton determined that Plaintiff should have

22 limited contact with public and co-workers. (Ar at 187.)

23          Accordingly, the ALJ failed to provide clear and convincing reasons to reject Dr.

24 Scaramozzino's uncontroverted medical opinions.

25      **4.**     **The ALJ Committed Errors of Law at Step Five**

26          At step five, the Commissioner bears the burden of showing that Plaintiff can perform

27 work that exists in "significant numbers" in the national economy, taking into consideration

28

1   Plaintiff's education, age, work experience, and her residual functional capacity. 20 CFR §§

2   220.131(e), 404.1520(f), 404.1560(b)(3); *see also Tackett,* 1999 WL 421324 at *5.  "[R]esidual

3   functional capacity" is "the maximum degree to which the individual retains the capacity for

4   sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpt. P,

5   App. 2 § 200.00© (emphasis added).  There are two ways the Commissioner can make this

6   showing: (1) by the testimony of a vocational expert, or (2) by reference to the

7   Medical-Vocational Guidelines at 20 C.F.R. Pt 404, Subpart P, App. 2.

8       The ALJ determined that Plaintiff has the residual functional capacity to perform light

9   work as defined in 20 CFR 416.967(b) and that suitable jobs for Plaintiff "existed in significant

10  numbers in the national economy. (AR at 24-5.)  This determination, however, is not supported by

11  substantial evidence in the record as a whole and is based on the following errors of law: (1) the

12  ALJ disregarded Plaintiff's testimony of debilitating pain and functional limitations in assessing

13  Plaintiff's residual functional capacity, *see supra,* Section III.B.1; (2)  the ALJ disregarded

14  Plaintiff's Roommate's testimony of Plaintiff's pain and functional limitations in assessing

15  Butler's residual functional capacity, *see supra,* Section III.B.1.iv; (3) the ALJ disregarded certain

16  limitations within the opinions of Plaintiff's examining physicians in assessing Plaintiff's residual

17  functional capacity, *see supra,* Sections III.B.2., III.B.3; and (4) the ALJ's hypotheticals to the

18  vocational expert were based on the ALJ's erroneous assessment of Plaintiff's residual functional

19  capacity and did not incorporate information relevant to Plaintiff's ability to obtain and retain

20  employment.

21              **i.    Improper Hypotheticals to the Vocational Expert**

22      To establish that there are jobs in "significant numbers" in the national economy that

23  claimant can perform, the ALJ may call a vocational expert to testify. At the hearing, the ALJ

24  should pose hypothetical questions to the vocational expert that "set out all of the claimant's

25  impairments." *Gamer v. Secretary of Health and Human Servs*., 815 F.2d 1275, 1279 (9th

26  Cir.1987). The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and

27

28

supported by the medical record." *Tackett,* 1999 WL 421324 at *5; *accord Gamer*, 815 F.2d at 1279-80.

A vocational expert was called to testify at Plaintiff's hearing. But the hypothetical questions the ALJ posed to the vocational expert did not "set out all of [Plaintiff's] impairments" and excluded factors relevant to determining Plaintiff's ability to obtain and retain employment. *Gamer,* 815 F.2d at 1279. In her hypothetical questions to the vocational expert, the ALJ improperly disregarded the standing, sitting and walking limitations opined by Plaintiff's examining physician. Similarly, the ALJ improperly disregarded Plaintiff's mental limitations opined by Plaintiff's examining psychiatrist in her questions to the vocational expert. Lastly, because the ALJ improperly discredited Plaintiff's and her roommate's pain testimony, the resulting erroneous residual functional capacity findings served as a predicate for inaccurate hyoptheticals for the vocational expert.

## CONCLUSION

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that remand for further proceedings is proper to allow the ALJ to review all of the testimonial, medical and psychological evidence as outlined above.

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, this Court RECOMMENDS that:

1.   Plaintiff's motion for summary judgment (Dkt. No. 15) is granted;

2.   The Commissioner's cross-motion for summary judgment (Dkt. No. 16) is denied;

3.   The decision of the ALJ be REVERSED and the case remanded to the Commissioner, pursuant to 42 U.S.C. §404(g) for further administrative proceedings consistent with this order.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    February 2, 2012              /s/ Barbara A. McAuliffe**
                                   UNITED STATES MAGISTRATE JUDGE